IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.                                          CASE NO. 1:03-cr-00048-SPM -GRJ

ENRIQUE MALDONADO PINEDA,

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 287, a motion to vacate pursuant to 28 U.S.C. § 2255.  The motion stems from Defendant's conviction for one count of conspiracy to distribute and possession with intent to distribute more than 50 grams of methamphetamine and more than 500 grams of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A)(viii), for which Defendant received a sentence of 169 months imprisonment.  Defendant contends that his trial counsel rendered ineffective assistance by: (1) failing to advise him adequately regarding the benefits and consequences of going to trial versus entering a guilty plea; (2) failing to object to the presentence report (PSR) and to argue for a reduction in Defendant's offense level for minor role in the offense; and (3) failing to argue that Defendant was eligible for sentencing under the 18 U.S.C. § 3553(f) "safety valve."  The Court conducted an evidentiary hearing on Defendant's claims, at which Defendant was represented by retained counsel.   Upon due consideration, and for the following reasons, the undersigned recommends that the motion to vacate be denied.

## Background

Defendant and co-Defendant Omar Garcia Vazquez-Casares were tried together by a jury on March 8, 2004. During the trial, co-Defendant Octavio Ugarte-Munoz testified as a government witness, implicating both Defendant and Vazquez-Casares in the conspiracy. As summarized by the Eleventh Circuit in affirming Defendant's conviction, the evidence adduced at trial showed that:

> (1) [Defendant] was present when Vazquez-Casares placed a towel-concealed package into Ugarte-Munoz's vehicle, which was found to be methamphetamine, and Ugarte-Munoz was offered $5000 to drive the package to Ocala, Florida; (2) [Defendant] and Vazquez-Casares followed Ugarte-Munoz's vehicle in a Camaro for approximately three hours and stopped nearby, whenever Ugarte-Munoz stopped; (3) [Defendant] was in the car while Vazquez-Casares made 12 calls to Ugarte-Munoz and Ugarte-Munoz called Vazquez 4 times so that instructions could be given to Ugarte-Munoz; (4) the methamphetamine smelled like soap and was wrapped in Wal-Mart bags; (5) soap with the same fragrance as the methamphetamine and wrapped in Wal-Mart bags was discovered tucked behind the wheel well of [Defendant's] Camaro; (6) [Defendant] gave an explanation for his destination inconsistent with Vazquez-Casares's explanation; (7) [Defendant] and Vazquez-Casares stated that they did not know Ugarte-Munoz even though they had been following him for miles and Vazquez-Casares repeatedly had spoken on the telephone with him; and (8) [Defendant] was carrying $600 in cash and a card with the drug supplier's phone number on it.

Doc. 224 at 4 (concluding that the evidence was sufficient to prove that Defendant and Vazquez-Casares knowingly participated in a drug conspiracy).

Defendant was interviewed in connection with the preparation of his PSR. He stated that on the day of his arrest he was going to the beach with his friend, and he denied meeting Ugarte-Munoz on the day of his arrest or knowing Ugarte-Munoz.

Using the 2003 edition of the Sentencing Guidelines, Defendant's PSR assigned an offense level of 34 based on the quantity of methamphetamine involved in the offense, pursuant to U.S.S.G. § 2D1.1(c). Noting that Defendant had failed to accept

any personal responsibility for his involvement in the offense, the PSR did not adjust the offense level for acceptance of responsibility under § 3E1.1.  Defendant had no criminal history points, and therefore his criminal history category was I.  Defendant was subject to a statutory mandatory minimum sentence of 10 years and a maximum of life, pursuant to 21 U.S.C. § 841(b)(1)(A).  With an offense level of 34 and criminal history category of I, Defendant's guideline imprisonment range was 151 to 188 months. Defendant's trial counsel, Thomas Edwards, did not object to the PSR.  Defendant was sentenced to 169 months imprisonment and five years of supervised release.

Although the Eleventh Circuit affirmed Defendant's conviction, his case was remanded for resentencing pursuant to *United States v. Booker*, 543 U.S. 220 (2005). Doc. 224 at 9.  Defendant, represented by different counsel, interposed objections to the PSR prior to resentencing.  Defendant asserted that he qualified for sentencing under the safety valve and that he was entitled to a downward departure for his minor role in the offense pursuant to § 3B1.2.

At the resentencing hearing on May 1, 2006, Defendant's counsel argued that Defendant had acted solely as a driver for Vasquez-Casares, and should be entitled to a three-point adjustment in offense level for his minor role in the offense.  Counsel also argued that Defendant was eligible for sentencing under the safety valve, and was prepared to debrief on that day.  In response, the Government argued that Defendant was not merely a driver but played an active role in the conspiracy.  The Government further argued that Defendant was not entitled to sentencing under the safety valve because Defendant had never offered the Government any truthful information, and all information that he had proffered was misleading or false.

The Court determined that the Defendant's objections were not within the scope of the Eleventh Circuit's remand, but the Court noted "for the record that these objections would be overruled in any event. The defendant has not shown that he is any less culpable than other co-defendants of the case, and the defendant's continued denial to probation of his involvement in the offense, both before and after the trial, precludes him from eligibility for safety valve treatment." The Court resentenced Defendant to 169 months' imprisonment. His sentence was affirmed. Doc. 285.

Defendant then filed the instant motion to vacate, alleging that his trial counsel rendered ineffective assistance by not fully explaining to him the possible sentencing benefits that he would receive had he pleaded guilty rather than going to trial. Defendant also alleges that his trial counsel rendered ineffective assistance by not pursuing the sentencing objections that his counsel on resentencing attempted to raise. *See* Doc. 287.

## Ineffective Assistance of Counsel

Because Defendant's claims raise the issue of counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir.

1986).

With regard to the performance prong of *Strickland*, a defendant must provide

factual support for his contentions that counsel's performance was constitutionally

deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must

consider counsel's performance in light of all of the circumstances at that time and

indulge in a strong presumption that counsel's conduct fell within the wide range of

reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's

performance was unreasonable, a defendant must establish that "no competent

counsel would have taken the action that his counsel did take." *Grayson v. Thompson*,

257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective,

and "it matters not whether the challenged actions of counsel were the product of a

deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281

(11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what

reasonably could have motivated counsel." *Id*. "An ambiguous or silent record is not

sufficient to disprove the strong and continuing presumption . . . that [counsel] did what

he should have done and that he exercised reasonable professional judgment."

*Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc). "The

relevant question is not whether counsel's choices were strategic, but whether they

were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no

"absolute rules" for determining whether counsel's actions were indeed reasonable, as

"[a]bsolute rules would interfere with counsel's independence–which is also

constitutionally protected–and would restrict the wide latitude counsel have in making

tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold

a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Of particular relevance to this case, where a defendant challenges a not-guilty plea based on ineffective assistance of counsel, he must "show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." *Coulter v. Herring*, 60 F.3rd 1499, 1504 (11th Cir. 1995) (internal quotations omitted).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have

acted in the circumstances as defense counsel acted.  *Williamson v. Moore*, 221 F.3d
1177, 1180 (11th Cir. 2000).

## Evidentiary Hearing

At the evidentiary hearing held before the undersigned on January 7, 2011,
Defendant, through an interpreter, testified that prior to trial he met with Mr. Edwards on
four or five occasions, for 15 or 20 minutes each time.  An interpreter was present at
the meetings.  He testified that although Mr. Edwards discussed the applicable
sentencing guideline offense levels with him, he did not explain that Defendant could
get a reduction in the offense level for acceptance of responsibility by pleading guilty, by
being considered a minor participant in the offense, or by meeting the requirements of
the safety valve.  Defendant learned of these possible sentence reductions while he
was in prison.   Defendant testified that had he understood all of the possible sentence
reductions, he "would have accepted culpability for guilt."  On cross-examination,
Defendant admitted that he was guilty of the charged offense, but that he had never
told that to another lawyer prior to telling his current attorney, Mr. Charles Banker, who
represented him at the evidentiary hearing.

Mr. Edwards testified on behalf of the Government.  Mr. Edwards testified that
following his appointment to represent Defendant he met at length with the Defendant
on several occasions, with the assistance of a certified interpreter.  Mr. Edwards
testified that throughout his case Defendant insisted that he had no involvement in drug
trafficking, and steadfastly denied any involvement in the charged conspiracy.  Mr.
Edwards testified that he "absolutely" discussed with Defendant the benefits and
consequences of going to trial versus pleading guilty, and that he always does so with

clients, particularly in drug cases which could result in imposition of lengthy mandatory sentences. Defendant's "steadfast decision was I'm not pleading because I don't know anything." Defendant never indicated that he had changed his mind regarding his not-guilty plea. Mr. Edwards testified that the Government believed Defendant had a great deal of information and could assist himself even following the trial, but Defendant maintained his innocence throughout the proceeding.

On cross-examination, Mr. Edwards stated that Defendant's insistence on his innocence did not cause him to overlook explaining to Defendant how a guilty plea might affect his sentencing exposure. Mr. Edwards testified that he felt frustrated with Defendant's denial of certain aspects of the case, and his stubbornness, but that he would have had an in-depth discussion with him regarding a plea. He also discussed with Defendant the benefits of cooperating with the Government and testifying as to what he knew in order to obtain the benefit of a U.S.S.G. 5K1 reduction. He testified that he did not know whether he would have discussed a sentence reduction based solely on minor role in the offense, because Defendant denied knowing anything about the offense and therefore his role could not be assessed. Mr. Edwards testified that in his experience once a client has steadfastly maintained a position of innocence, the lawyer-client relationship can deteriorate if an attorney continues to express doubt about his client's position. Mr. Edwards testified that notwithstanding Defendant's insistence on his innocence, he would have discussed the safety valve with him due to the fact that Defendant had no scoreable criminal history. After discussing the benefits of Defendant cooperating with the Government and Defendant's insistence that he did not know anything and was innocent, Mr. Edwards did not discuss with Defendant the

possibility of simply entering a "straight-up" guilty plea with no cooperation agreement. In his view, it would have been problematic for a client who maintained his innocence to go into court and testify under oath that there was a factual basis for his guilty plea.

Mr. Edwards testified that he did not argue for a minor role adjustment at sentencing because he did not believe he could make a credible argument for that, in light of the evidence adduced at trial. He testified that he did not believe the Court would consider that argument favorably, and that he has an obligation to present the Court with only colorable, credible arguments. Mr. Edwards testified that he was aware that the DEA had information that Defendant's relationship with the other conspirators went beyond the scope of the one charged transaction.

## Discussion

## Claim One: Advice Regarding Benefit of Plea Versus Trial

Defendant contends that Mr. Edwards did not adequately advise him regarding the benefits and consequences of pleading guilty versus going to trial. On this record, the undersigned concludes that Defendant has established neither the deficient performance nor prejudice prongs of *Strickland* with regard to his first claim. The Court finds Mr. Edwards' testimony more credible than Defendant's on this point. Mr. Edwards' testimony supports a finding that he informed Defendant of the benefits and consequences of entering a plea with respect to Defendant's sentencing exposure, to an extent consistent with Defendant's steadfast insistence that he was innocent of the charged conspiracy and had no information about drug trafficking. Mr. Edwards testified that in view of Defendant's adherence to his position, he focused on trial preparation and advising Defendant on the sentencing benefits of cooperation. In the

absence of any evidence in the record that Defendant ever expressed an interest in admitting his guilt of the charged conspiracy – and in fact only admitted his guilt while preparing for this proceeding – Defendant has not overcome the strong presumption that Mr. Edwards exercised reasonable professional judgment in advising Defendant.

At the evidentiary hearing, Defendant's counsel argued that Mr. Edwards should have advised Defendant about the possibility of pleading guilty, without cooperating with the Government, and possibly receiving a two or three level reduction in the offense level for acceptance of responsibility. Again, based on Defendant's insistence to his counsel that he was innocent, the undersigned does not find that it was deficient performance not to so advise Defendant.

Further, Defendant has failed to show that he was prejudiced by not receiving such advice. Defendant's after the fact testimony that he would have entered a guilty plea under such circumstances, viewed through the distorting lens of hindsight, does not alone establish prejudice. Defendant has pointed to no evidence in the record that would support a conclusion that prior to his conviction he expressed a desire to plead guilty and would have done so, but for counsel's asserted error. *See Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (rejecting claim that defendant was prejudiced by counsel's advice that plea offer was unacceptable, when there was no evidence that defendant had any desire to plead guilty, and defendant offered only his after the fact testimony to support his claim that he would have pled guilty).

## Claims Two and Three: Sentencing Objections

Defendant contends that Mr. Edwards rendered ineffective assistance during the sentencing phase by failing to pursue sentence reductions based on his allegedly minor

role in the offense and his eligibility for the safety valve.  Mr. Edwards testified at the evidentiary hearing that he did not believe that he could credibly argue for a downward adjustment in Defendant's offense level based on his minor role, particularly when Defendant continued to assert that he had no role in the offense at all.

There was tangible evidence adduced at trial which strongly suggested that Defendant was an active participant in the conspiracy, including a business card from Defendant's wallet that contained the name and phone number of the drug supplier, and the memory of  Defendant's cell phone which reflected calls received from and to Vazquez-Casares' and the drug supplier on the days prior to his arrest.  Further, counsel was aware that the DEA had information that implicated Defendant in drug activity beyond the charged conspiracy.  On this record, Defendant has not overcome the strong presumption that Mr. Edwards exercised reasonable professional judgment in refraining from pursuing an adjustment for minor role.  Moreover, the Court's statement at resentencing that it would have rejected such an argument provides strong support for a conclusion that Defendant was not prejudiced by counsel's decision not to pursue that adjustment.

Defendant's claim that counsel was ineffective for not pursuing sentencing under the safety valve is similarly unpersuasive.  To qualify for relief pursuant to the safety valve provision of 18 U.S.C. § 3553(f), a defendant must, *inter alia*, "truthfully provide the government with all information and evidence he has concerning the offense." *United States v. Suarez O'Neill*, 2006 WL 1153748, at *3 (11th Cir. May 2, 2006)

(unpublished).[1]  This is a "tell-all" provision and places an affirmative responsibility on the defendant to "truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct."  *United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004).  Defendant points to nothing in the record that suggests during Mr. Edwards' representation he would have been willing to fully and truthfully debrief regarding his involvement in the conspiracy and all relevant conduct, and thus Mr. Edwards' decision not to pursue sentencing under the safety valve was neither an unreasonable exercise of professional judgment nor did it cause prejudice to Defendant.  As the Court noted at resentencing, Defendant's continued denial of involvement in the conspiracy would have made him ineligible for the safety valve.

## Conclusion

In light of the foregoing, it is respectfully **RECOMMENDED:**

That the motion to vacate, Doc. 287, be **DENIED** and that a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 26th day of January 2011.

*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

---

[1]Unpublished opinions of the Eleventh Circuit are not considered binding precedent but may be cited as persuasive authority pursuant to 11th Cir. R. 36-2.